NOTICE

Decision filed 02/11/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170440-U

NO. 5-17-0440

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-CF-1012 |
| | ) | |
| MYLAN TARRION NEWBERN, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: This appeal from a judgment of conviction, entered after the defendant pleaded guilty to first degree murder pursuant to a fully negotiated plea agreement with the State, does not present any issue of arguable merit, and therefore the defendant's appointed attorney on appeal is granted leave to withdraw, and the judgment of conviction is affirmed.

¶ 2    In 2017, the defendant, Mylan Tarrion Newbern, pleaded guilty to first degree murder on a theory of felony murder (720 ILCS 5/9-1(a)(3) (West 2012)) and was sentenced to imprisonment for 30 years, all pursuant to a fully negotiated plea agreement with the State. He now appeals from the judgment of conviction. His appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis it has filed with this court a motion to withdraw as counsel, along with a brief in support thereof. See *Anders v. California*, 386 U.S. 738 (1967). OSAD provided the defendant with a copy of its *Anders* motion

1

and brief. This court gave the defendant ample opportunity to file a written response to OSAD's motion, or a memorandum, brief, etc., explaining why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Anders* motion and brief, as well as the entire record on appeal, and has determined that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of conviction is affirmed.

¶ 3                                    BACKGROUND

¶ 4     Newbern was born on September 20, 1998. In November 2012, the State instituted proceedings against Newbern under article V of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-101 *et seq.* (West 2012)). In a verified petition, the State alleged that Newbern, a minor, was delinquent in that he had committed two counts of first degree murder, one count of residential burglary, and one count of attempted armed robbery. See 705 ILCS 405/5-120, 5-520(1) (West 2012). The petition set forth the name and residence of Newbern's mother, and the name of Newbern's father, but the petition stated that the State did not know the father's residence. See 705 ILCS 405/5-520(2) (West 2012). Newbern was detained.

¶ 5     Not long after filing the juvenile petition, the State filed a motion for a discretionary transfer, *i.e.*, a motion to permit prosecution of Newbern under the criminal laws. See 705 ILCS 405/5-805(3)(a) (West 2012). Newbern filed a motion to dismiss the State's motion, on the ground that Newbern's conviction in criminal court would result in a mandatory prison sentence that would violate the constitutional prohibition against cruel and unusual punishment.

¶ 6     In March 2013, the court held a hearing on the State's motion for a discretionary transfer. See 705 ILCS 405/5-805(3)(a) (West 2012). The State presented evidence indicating that on November 8, 2012, in Granite City, Illinois, Newbern and a small number of friends or

2

acquaintances decided to rob someone. At that time, Newbern was 14 years old; the friends or acquaintances were a bit older. They spotted a man as he walked toward a particular retail store, and they decided to lie in wait and to rob him. Not long after the man departed from the store, carrying a purchase, Newbern and the other teenagers surrounded the man and demanded money from him. When the man did not hand over any money, Newbern pointed a gun at the man and shot him once in the chest. Newbern and the other teenagers immediately ran from the scene. The man, Charles Weiss, soon died from the gunshot wound. The State also presented evidence indicating that approximately one week prior to the shooting of Charles Weiss, Newbern acted as the lookout as some friends broke into a residence in Madison, Illinois, and stole two handguns and a shotgun. Additional evidence presented by the State during the transfer hearing concerned Newbern's history of aggressive or threatening behavior toward schoolmates and others, his history of delinquency, and other matters relevant to a discretionary-transfer determination.

¶ 7    In May 2013, a few weeks after the transfer hearing, the juvenile court entered a written order granting the State's motion to transfer and permitting Newbern's prosecution under the criminal laws. The court found that there was probable cause to believe that the allegations in the transfer motion were true and that it was not in the best interests of the public to proceed under the Juvenile Court Act.

¶ 8    Shortly after the juvenile court granted the transfer motion, the State filed an information charging Newbern with two counts of first degree murder, one count of residential burglary, and one count of attempted armed robbery. One of the murder counts charged felony murder, and the other charged strong-probability murder, but both murder counts stemmed from the shooting death of Charles Weiss. A superceding indictment, charging the same four offenses, soon followed.

3

¶ 9    In May 2014, and notwithstanding the transfer order that the juvenile court had entered one year earlier, Newbern filed in the juvenile case a "motion to vacate all previous orders for lack of personal jurisdiction over minor's father." According to Newbern, the State had reason to know that his father was an inmate at the federal prison in Terre Haute, Indiana, but the State nevertheless failed to serve the father with notice or summons, and due to this failure, the juvenile court never obtained personal jurisdiction over Newbern's father, and because the father was a necessary and indispensable party in the juvenile case, all of the orders previously entered by the juvenile court were void *ab initio*.

¶ 10   Also, in May 2014, the defendant filed in the instant criminal case a motion to dismiss the charges for lack of jurisdiction. This motion was very similar to the "motion to vacate all previous orders" that Newbern had filed in the juvenile case, though it added that because all of the orders previously entered by the juvenile court were void *ab initio*, and since these orders included the order purportedly transferring subject-matter jurisdiction to the criminal court, the criminal court never obtained subject-matter jurisdiction over Newbern's case, and Newbern's prosecution under the criminal laws was therefore precluded. The State filed a motion to "strike/deny" Newbern's motion to dismiss the charges, wherein the State stated, *inter alia*, that Newbern had forfeited any issue relating to a lack of service upon his father by failing to raise that issue in the juvenile court, and that any lack of personal jurisdiction over the father did not deprive the juvenile court of its authority "to act against [Newbern]."

¶ 11   In June 2014, the criminal court held a hearing on Newbern's motion to dismiss the criminal charges for lack of jurisdiction. In answer to the court's query, Newbern's counsel explained why he had not raised the issue of jurisdiction when the case was before the juvenile court; counsel stated that he simply had failed to see previously that a jurisdictional issue existed,

4

but counsel insisted that because the issue concerned jurisdiction, it could be raised at any time. The State called one witness at the hearing, an employee of the Madison County probation office, who testified about her efforts to find an address for Newbern's father. Toward the end of the hearing, Newbern's attorney informed the court that in May 2014, at the same time that he filed in the criminal case the motion to dismiss charges, he also filed in the juvenile case a "motion to vacate all previous orders for lack of personal jurisdiction over minor's father." The court indicated that it would locate the motion to vacate and would rule on it, too. The court took the matter under advisement.

¶ 12    In September 2016, more than two years after the June 2014 hearing, the criminal court entered a lengthy written order wherein it denied both Newbern's motion to dismiss the criminal charges, filed in the instant criminal case, and his motion to vacate all previous orders, filed in the juvenile case. In its order, the court noted that Newbern's mother was the custodial parent, and had been the custodial parent for the entirety of Newbern's life, and that she had been served with notice of the juvenile proceedings and had attended all of the proceedings in the juvenile court, while Newbern's father did not pay child support and had been incarcerated for much of Newbern's life. The court determined, *inter alia*, that Newbern had forfeited the issue of lack of notice to his father by failing to raise the issue during the transfer proceedings in juvenile court; that, forfeiture notwithstanding, the State's failure to notify the father of the transfer proceedings did not deprive the defendant of due process; and that the criminal court did not lack jurisdiction over Newbern's case.

¶ 13    In December 2016, Newbern filed in the juvenile case a motion asking the court to schedule a hearing on his May 2014 "motion to vacate all previous orders for lack of personal jurisdiction over minor's father." In January 2017, the circuit court entered an order in the juvenile case,

denying Newbern's motion to vacate all previous orders. The court ruled on *res judicata* grounds, finding that the issue in Newbern's motion to vacate all previous orders was exactly the same as the issue in Newbern's motion to dismiss charges, a motion that Newbern had filed in the criminal case in early May 2014 and that the criminal court had denied in September 2016.

¶ 14    Newbern filed a notice of appeal from the January 2017 order denying his motion to vacate all previous orders, thus initiating the appeal in *In re M.N.*, 2017 IL App (5th) 170078-U. (In that appeal, the parties and the court referred to Newbern only by his initials, M.N.) Newbern's appointed attorney in that 2017 appeal, OSAD, concluded that the appeal lacked merit, and it filed a motion to withdraw as counsel on that basis. On September 27, 2017, this court entered an order granting OSAD leave to withdraw as counsel and affirming the judgment of the circuit court. This court agreed with OSAD's assessment that "[Newbern] could not credibly argue that the juvenile court's orders in the delinquency case were void due to a lack of personal jurisdiction over [Newbern's] father." *In re M.N.*, 2017 IL App (5th) 170078-U, ¶ 20. This court's unpublished order included the following sentence and citation:

> "A minor lacks standing to object to the validity of an order entered by a juvenile court where the objection is based upon an alleged lack of personal jurisdiction over someone other than the minor. *In re M.W.*, 232 Ill. 2d 408, 427 (2009) (minor had argued that adjudication of delinquency was void due to juvenile court's lack of personal jurisdiction over minor's father)." *In re M.N.*, 2017 IL App (5th) 170078-U, ¶ 20.

¶ 15    On May 19, 2017, Newbern, his appointed attorney, and an assistant state's attorney appeared before the circuit court. Newbern's attorney informed the court, and the State confirmed, that the parties had reached an agreement pursuant to which Newbern would plead guilty to the felony murder count against him, and he would be sentenced to imprisonment for a term of 30

years, while the three other counts against him would be dismissed. In response to a query from the court, defense counsel stated that Newbern was "submitting to the jurisdiction" of the court. The court then asked Newbern whether counsel had stated the plea agreement as Newbern understood the agreement, and Newbern answered in the affirmative. In response to other questions posed by the court, Newbern stated that he was 18 years old, had been through the eighth grade, had taken classes while in the detention home, and was not under the influence of alcohol or any drug. The court admonished Newbern as to the nature of the charge of first degree felony murder, and Newbern indicated his understanding of the charge. The court then stated that it would bind itself to the parties' negotiations and impose the agreed-upon sentence. The court asked Newbern how he wished to plead, and Newbern answered, "Guilty." At that, the court stated that before it would accept the plea, it wanted to discuss Newbern's rights and the possible penalties. The court admonished Newbern on the presumption of innocence, the State's burden of proving guilt beyond a reasonable doubt, the right to counsel, including appointed counsel, the right to plead not guilty, the right to a trial, whether by jury or by a judge alone, the right to confront and cross-examine witnesses against him, the right to subpoena and call witnesses on his own behalf, the right to testify or to remain silent at trial, and also admonished him that if he pleaded guilty, no trial would be held. Newbern indicated his understanding of all these matters. The court proceeded to explain the penalties, including imprisonment and mandatory supervised release (MSR), that Newbern faced for the felony murder charge against him, adding that he would not receive sentence credit except for the credit for presentencing incarceration, and Newbern indicated his understanding.

¶ 16     The State presented a detailed factual basis for the guilty plea, describing the circumstances surrounding Newbern's firing a bullet into Charles Weiss's chest during an attempted armed

7

robbery. In response to further queries from the court, Newbern indicated that nobody was using force or threats or promises outside the terms of the plea agreement in order to persuade him to plead guilty, and that he was pleading guilty plea freely and voluntarily and after having had an opportunity to discuss the plea and its consequences with appointed counsel. He confirmed that he still wanted to plead guilty. The court found that Newbern's plea was knowing and voluntary; it entered judgment on that plea, while dismissing the three other counts against Newbern. The court imposed the agreed-upon prison term of 30 years and MSR term of 3 years, adding that Newbern would be required to serve the entire 30-year term. Newbern, in response to the court's query, indicated that the sentence imposed was the sentence agreed upon. Finally, the court advised Newbern on his appeal rights, and Newbern indicated his understanding.

¶ 17    On June 15, 2017, Newbern filed a motion to withdraw his guilty plea. It was followed by two amended motions. In his second amended motion to withdraw guilty plea, Newbern claimed that the criminal court "did not have jurisdiction to accept the plea as the case was never properly transferred from the [j]uvenile [c]ourt." According to Newbern, the juvenile court (1) "did not have personal jurisdiction over all the necessary parties" and (2) abused its discretion, and deprived Newbern of his right to the due process of law, when it ordered that the juvenile case be closed and the charges transferred to the jurisdiction of the criminal court.

¶ 18    Defense counsel filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The certificate specified that counsel had consulted with the defendant "in person, by mail, and by phone," and it otherwise tracked the language of Rule 604(d).

¶ 19    On October 26, 2017, the circuit court held a hearing on the defendant's motion to withdraw his plea. Both parties presented arguments. At the close of the hearing, the court denied the motion. The defendant filed a timely notice of appeal from the judgment of conviction, thus

perfecting the instant appeal. The circuit court appointed OSAD to represent the defendant in this appeal.

¶ 20                                                    ANALYSIS

¶ 21    As previously mentioned, OSAD has concluded that the instant appeal lacks substantial merit, and on that basis, it has filed an *Anders* motion to withdraw as Newbern's attorney on appeal. In the brief accompanying its *Anders* motion, OSAD presents three potential issues: (1) whether the circuit court properly admonished Newbern pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012); (2) whether Newbern's case was properly transferred to the criminal court under the Juvenile Court Act; and (3) whether Newbern's attorney in the circuit court filed a satisfactory certificate of compliance with Illinois Supreme Court Rule 604(d). This court will discuss each of the three.

¶ 22    As to the first of the three potential issues, this court agrees with OSAD that the circuit court properly admonished Newbern pursuant to Supreme Court Rule 402. Under Rule 402, a court cannot accept a criminal defendant's guilty plea unless it has informed the defendant of, and has determined that the defendant understands, the nature of the charge, the possible sentences, the right to plead guilty or not guilty, and that a guilty plea results in the waiver of the right to a trial and of the right to be confronted by the witnesses against the defendant. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The rule itself demands "substantial compliance" with its requirements. Ill. S. Ct. R. 402 (eff. July 1, 2012). This court has detailed, *supra*, the admonitions that the circuit court provided to Newbern at the guilty-plea hearing, as well as the questions that the court posed to him and the answers that Newbern gave. To say the least, the court substantially complied with the admonition requirements. Also, the court substantially complied with other portions of Rule 402, as this court's discussion, *supra*, also makes clear. Specifically, the court determined, with good

reason, that the plea was knowing and voluntary and that there was a factual basis for the plea. See Ill. S. Ct. R. 402(b), (c) (eff. July 1, 2012). There can be no doubt that the circuit court substantially complied with Rule 402.

¶ 23    As to the second of OSAD's potential issues, *i.e.*, the issue of whether Newbern's case was properly transferred to the criminal court under the Juvenile Court Act, it too lacks substantial merit. In the circuit court, Newbern argued that because his father was not served with notice about the juvenile proceedings against him, the juvenile court lacked personal jurisdiction over his father, and therefore all of the orders entered by the juvenile court, including the order transferring his case to criminal court, were void *ab initio*. In the instant appeal, this jurisdictional issue would be *res judicata*. As noted *supra*, this court considered the jurisdictional issue in Newbern's prior appeal and concluded that it was without merit. See *In re M.N.*, 2017 IL App (5th) 170078-U, ¶ 20.

¶ 24    As to OSAD's third potential issue—the issue of whether Newbern's attorney in the circuit court filed a satisfactory certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017)—there can be no doubt that the certificate was satisfactory. Newbern's attorney filed his Rule 604(d) certificate in July 2017, on the same date that Newbern's first amended motion to withdraw guilty plea was filed, and approximately three months prior to the filing of the second amended motion and the circuit court's hearing thereon. The certificate stated that counsel had consulted with the defendant "in person, by mail, and by phone," and it otherwise tracked the language of Rule 604(d). A *de novo* review of the certificate shows that the certificate strictly complied with the rule. See, *e.g.*, *People v. Zendejas*, 2017 IL App (2d) 160565, ¶ 3. Any argument to the contrary would lack merit.

¶ 25                          CONCLUSION

¶ 26    This court concludes that the instant appeal does not present any issue of arguable merit.

Therefore, OSAD is granted leave to withdraw as counsel, and the judgment of conviction is

affirmed.


¶ 27    Motion granted; judgment affirmed.